UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EMILIO FUSCO,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

Civil Action No. 20-864 (JEB)

MEMORANDUM OPINION

Plaintiff Emilio Fusco, currently serving a 25-year sentence on racketeering and extortion charges, brought this *pro se* action to complain that his extradition and incarceration violated the U.S.-Italy Bilateral Extradition Treaty and thus warrant $5 million in damages. The Government now moves to dismiss, arguing that sovereign immunity deprives the Court of jurisdiction and that, on the merits, Fusco's claim is barred by the statute of limitations and by the doctrine of *res judicata*. Agreeing on all points, the Court will grant the Motion.

I.      Background

On this Motion to Dismiss, the Court views the facts pled in the Complaint as true, except where citing public records. Emilio Fusco is a dual citizen of Italy and the United States. See ECF No. 1 (Compl.), ¶ 1. On July 29, 2010, he was arrested in the former country and then extradited here to face a five-count indictment on racketeering and conspiracy charges. Id., ¶¶ 4–8. On October 11, 2012, Plaintiff was convicted in the Southern District of New York of racketeering conspiracy (18 U.S.C. § 1962(d)), extortion conspiracy (18 U.S.C. § 1951), and interstate travel in aid of racketeering (18 U.S.C. § 1952), while obtaining acquittals on two other counts. See United States v. Fusco, 560 F. App'x 43, 44–45 (2d Cir. 2014). A racketeering

1

conviction under the Racketeer Influenced and Corrupt Organizations (RICO) Act requires proof of the existence of a "pattern of racketeering activity" involving "two or more related predicate acts of racketeering."  United States v. McGill, 815 F.3d 846, 932 (D.C. Cir. 2016) (citations and internal quotations omitted); see also 18 U.S.C. § 1962(c).  The District Court sentenced Fusco to 25 years' imprisonment, relying in part on its finding by a preponderance of the evidence that he had participated in the predicate acts of conspiracy to murder.  Fusco, 560 F. App'x at 45.

On appeal to the Second Circuit, Plaintiff claimed that his prosecution and sentencing had violated the U.S.-Italy Extradition Treaty.  Id.  Specifically, he contended that the U.S. Government's extradition request had promised that he would be charged with only five counts (not including homicide) and could be convicted and sentenced only on proof beyond a reasonable doubt.  Id.  Fusco claimed that he was actually "prosecuted and sentenced for the crime of homicide" based on a lower standard of proof, "in violation of the Extradition Treaty." Id.  The Second Circuit rejected this argument, noting that "as the indictment and judgment make clear, Fusco was neither prosecuted nor sentenced for the crime of homicide."  Id.  Rather, he was sentenced "for the racketeering charge with the murders as predicate acts," and the lower court's "judicial factfinding with respect to the murders did not increase the prescribed 45–year statutory maximum for the convicted crimes," meaning that they did not need to be proved beyond a reasonable doubt.  Id. at 45–46.  Shortly after his conviction was affirmed, Plaintiff filed a motion to vacate, set aside, or correct his sentence.  See Fusco v. United States, No. 09-1239, 2018 WL 6097874, at *1 (S.D.N.Y. Nov. 21, 2018).  Although Fusco's motion raised his treaty-violation argument, the court mentioned that this had already been rejected by the Second Circuit, and it thus focused its analysis on Plaintiff's new, unrelated claims before denying the motion.  Id. at *2, 8.

On March 30, 2020, nearly nine years after his 2011 extradition, Plaintiff brought this current action against Assistant U.S. Attorney Mark Lanpher, claiming that Lanpher "knew or should have known at the time" he filed the extradition request that he was understating the number of charged counts and overstating the minimum burden of proof.  See Compl., ¶¶ 8, 11. Had Italy known this, Fusco believes, it "would not have extradited the Plaintiff to the United States of America."  Id., ¶ 12.  In responding, the United States substituted itself as Defendant pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the Westfall Act), which immunizes government employees sued for actions taken within the scope of their employment.  See Def. MTD at 6; ECF No. 5-2, Exh. A (Westfall Certification) at ECF p. 24.  It simultaneously moved to dismiss, alleging a lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and a failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## II.    Legal Standard

Defendant's Motion invokes the legal standards for dismissal under Rules 12(b)(1) and 12(b)(6).  When a defendant brings a Rule 12(b)(1) motion to dismiss, the plaintiff must demonstrate that the court indeed has subject-matter jurisdiction to hear his claims.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000).  "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion [also] imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim."  Id. at 13–14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure

§ 1350 (2d ed. 1987)) (alteration in original).  In policing its jurisdictional borders, the court must scrutinize the complaint, treating its factual allegations as true and granting the plaintiff the benefit of all reasonable inferences that can be derived from the alleged facts.  See Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  The court need not rely "on the complaint standing alone," however, but may also look to undisputed facts in the record or resolve disputed ones.  See Herbert v. Nat'l Acad. of Sci., 974 F.2d 192, 197 (D.C. Cir. 1992).

Rule 12(b)(6), conversely, provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted."  When the sufficiency of a complaint is challenged under Rule 12(b)(6), the factual allegations presented in it must be presumed true and should be liberally construed in the plaintiff's favor.  Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).  Although the notice-pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  The plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.  In evaluating the sufficiency of a plaintiff's complaint under Rule 12(b)(6), the court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court]

may take judicial notice." EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

### III.   Analysis

The gravamen of Fusco's suit is his allegation that Lanpher's misstatements violated the Bilateral Extradition Treaty, which thereby caused his subsequent incarceration and suffering. Although he seeks $5 million in damages, Plaintiff has not articulated a specific cause of action for his claim. But "[c]ourts must construe *pro se* filings liberally," Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999), and the Court here will interpret Fusco's Complaint as alleging a cause of action under the Federal Tort Claims Act for the intentional tort of misrepresentation made in the course of the Government's extradition request. See Compl., ¶ 11.

Assuming that this is indeed his cause of action, the Government argues that the Court lacks subject-matter jurisdiction both because Plaintiff has not exhausted his administrative remedies and because the Government has not waived its sovereign immunity. Additionally, it contends that Fusco fails to state a claim because his suit is untimely and barred by the doctrine of *res judicata*. The Court will consider each of these four arguments in turn, although each separately suffices for dismissal.

   A.   Subject-Matter Jurisdiction

      *1.   Exhaustion of Administrative Remedies*

"[S]uits for damages against the United States under the common law must be brought pursuant to the limited waiver of sovereign immunity in the FTCA." Benoit v. U.S. Dept. of Agric., 608 F.3d 17, 20 (D.C. Cir. 2010). Sovereign immunity, moreover, "is jurisdictional in nature." FDIC v. Meyer, 510 U.S. 471, 475 (1994). In order to obtain a waiver of such immunity, a plaintiff must, under the FTCA, "have exhausted his administrative remedy before

filing suit." Benoit, 608 F.3d at 20 (citations omitted); see also McNeil v. United States, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."); Ali v. Rumsfeld, 649 F.3d 762, 775 (D.C. Cir. 2011) (failure to exhaust administrative remedies in FTCA case jurisdictional).

In order to satisfy the FTCA's administrative-exhaustion requirements, a plaintiff must first present his claim in writing to the appropriate federal agency within two years of the claim's accrual, see 28 U.S.C. § 2401(b), which in Fusco's case would have been the Department of Justice. Plaintiff offers a novel work-around, maintaining that, shortly after his 2012 trial, his attorney wrote the Italian Ministry of Justice with his complaints, and the Ministry then sent a letter to the Department of Justice to discuss the allegations. See ECF No. 7 (Pl. Opp.) at 7–8; ECF No. 7-1, Exh. F (DOJ Response Letter) at 1–2. This letter, however, was neither from Plaintiff nor did it constitute a written FTCA claim, and "informal complaints or requests to [an agency] do not suffice" for the purposes of administrative exhaustion. Davis v. United States, 944 F. Supp. 2d 36, 39 (D.D.C. 2013); see also Grant v. Sec'y, U.S. Dep't of Veterans Affs., No. 03-5260, 2004 WL 287125, at *1 (D.C. Cir. Feb. 4, 2004) (rejecting appellant's argument "that his informal letter of complaint to the Director of the Veterans' Administration Medical Center was sufficient to satisfy the FTCA's administrative exhaustion requirement").

Beyond this deficient contention, Plaintiff does not assert that he ever presented an administrative claim to the agency, and the Government supplies a sworn declaration stating that it has never received one from Fusco. See ECF No. 10-1, Exh. 1 (Declaration of Molly A. Edwards), ¶ 3. His failure to submit an administrative claim under the FTCA thus deprives this Court of subject-matter jurisdiction. See Davis, 944 F. Supp. 2d at 39; see also Henderson v. Ratner, No. 10-5035, 2010 WL 2574175, at *1 (D.C. Cir. June 7, 2010) (affirming dismissal of

FTCA claim where "[a]ppellant failed to demonstrate that he exhausted his administrative remedies before filing suit in the district court").

        *2.   Sovereign Immunity*

Another facet of sovereign immunity independently blocks Plaintiff's way.  It is true that the "FTCA operates as a limited waiver of sovereign immunity, rendering the United States amenable to suit for certain tort claims, subject to various exceptions." Scruggs v. Bureau of Engraving & Printing, 200 F. Supp. 3d 78, 82 (D.D.C. 2016).  Yet, "[o]ne such exception preserves sovereign immunity in claims against the government for certain intentional torts," including misrepresentation. Id.; see 28 U.S.C. § 2680(h) (sovereign immunity bars "any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights").

Misrepresentation, of course, is precisely the conduct in which Fusco alleges that Lanpher engaged.  As the Government explains: "Plaintiff appears to allege that former AUSA Lanpher committed the intentional tort of misrepresentation when he allegedly included 'untrue statements' regarding the counts with which Fusco had been charged in an affidavit." Def. MTD at 9.  It then states that "the United States has not waived sovereign immunity with respect to the intentional tort of misrepresentation." Id. at 9–10.   Fusco offers no rebuttal in his papers.

Even if the Court were to liberally construe Plaintiff's Complaint as also alleging false imprisonment, false arrest, malicious prosecution, or deceit, he would be out of luck since these torts still fall under the FTCA's international-tort exception, and the Government has made clear that it does not intend to waive sovereign immunity.  See Def. MTD at 10 n.8.  This jurisdictional ground also independently requires dismissal of the case.

B. <u>Merits</u>

Even if the Court had jurisdiction, which it does not, Fusco would come up short on the merits for two reasons.

### 1. *Statute of Limitations*

Section 2401(b) of the FTCA "provides that a tort claim against the United states 'shall be forever barred' unless it is presented to the 'appropriate Federal agency within two years after such claim accrues' and then brought to federal court 'within six months' after the agency acts on the claim.'" <u>United States v. Kwai Fun Wong</u>, 575 U.S. 402, 405 (2015) (quoting 28 U.S.C. § 2401(b)). A tort claim accrues "by the time a plaintiff has discovered both his injury and its cause." <u>Sexton v. United States</u>, 832 F.2d 629, 633 (D.C. Cir. 1987) (citation and quotation marks omitted). A court may equitably toll the limitations period, but only if a plaintiff can demonstrate "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005).

The Government asserts that "Plaintiff's claim accrued over a decade ago, on September 10, 2010, when the United States' request for his extradition, supported by an affidavit from then-AUSA Lanpher was filed with the Italian Ministry of Justice." Def. MTD at 11. This seems too early, given that Fusco might not then have known the charges he would ultimately face. Yet, even if the claim accrued on the date of his conviction in 2012 or perhaps the date the Second Circuit affirmed the conviction in 2014, he would still be outside the statutory two-year window by at least five years. To the extent Plaintiff could contend that the fact of conviction did not mean he had <u>discovered</u> the cause of the injury, he cannot deny that he was aware of it by the time his attorney wrote the Italian Ministry of Justice with these complaints in September

2012.  See DOJ Response Letter.  Nor has he ever claimed that the statute of limitations should have been tolled at any point.  His suit is thus untimely.

       2.   Res Judicata

Finally, the Government argues that Plaintiff's claim is barred by the doctrine of *res judicata*.  See Def. MTD at 11–13.  "Under the doctrine of *res judicata*, or claim preclusion, a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction."  Smalls v. United States, 471 F.3d 186, 192 (D.C. Cir. 2006).

Whether two suits involve the same claim turns on "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."  Apotex, Inc. v. Food & Drug Admin., 393 F.3d 210, 217 (D.C. Cir. 2004) (internal citations omitted).  "There is an identity of the causes of action when the cases are based on the same nucleus of facts, because it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies."  United States *ex rel.* Folliard v. Synnex Corp., 798 F. Supp. 2d 66, 77 (D.D.C.2011) (citations and internal quotation marks omitted).

The crux of this suit is that the prosecutor violated the Extradition Treaty by stating falsely in the extradition request that Fusco would not be tried or sentenced for the crime of homicide.  See Compl., ¶¶ 11–13.  But in his 2014 appeal of his conviction, Plaintiff raised the exact same claim, alleging that "his prosecution and sentencing violated the Extradition Treaty between the Government of the United States and the Government of the Italian Republic."

<u>Fusco</u>, 560 F. App'x at 45.  In that case, the Second Circuit rejected Fusco's argument because he "was neither prosecuted nor sentenced for the crime of homicide," and thus his "prosecution and sentencing did not violate the Extradition Treaty."  <u>Id.</u>  This case, as a result, involves the same claim between the same parties after there has already been a valid, final judgment on the merits made by a court of competent jurisdiction.  <u>Smalls</u>, 471 F.3d at 192.  Fusco's claim is accordingly also barred by the doctrine of *res judicata*.

**IV.     Conclusion**

For the foregoing reasons the Court will grant Defendant's Motion to Dismiss.  A separate Order so stating will issue this day.

<u>/s/ *James E. Boasberg*</u>
JAMES E. BOASBERG
United States District Judge

Date:  <u>March 19, 2021</u>

10